J-S06026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN KRAIDMAN | : | |
| | : | |
| Appellant | : | No. 713 EDA 2016 |

Appeal from the Judgment of Sentence January 19, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000045-2015

BEFORE: MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY RANSOM, J.: **FILED APRIL 18, 2017**

Appellant appeals from the judgment of sentence of eleven-and-one-half to twenty-three months of incarceration followed by eight years of probation imposed January 19, 2016, following a jury trial resulting in his conviction for theft by unlawful taking, theft by deception, and receiving stolen property.[1] We affirm.

The relevant facts and procedural history are as follows. Appellant was employed by Krapf Coaches, Inc. ("Krapf") from 2007 until he was terminated in September 2014 due to allegations that Appellant may have stolen a large amount of cash from the company. *See* Trial Ct. Op. (TCO),

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3921(a), 3922(a)(1), and 3925(a).

7/27/2016, at 5. Appellant worked as general manager of a Krapf subdivision known as Rover Community Transportation ("Rover"). Notes of Testimony (N.T.), 7/28/2016, at 16, 18. Rover is a form of public transit that primarily serves the elderly and individuals with a disability. N.T., 10/19/2016, at 15. The pick-ups can be scheduled by reservation only. Individual fares are predetermined based on mileage and subsidized by the Pennsylvania Department of Transportation (PennDOT). *Id.* at 15-16; TCO at 5. When a passenger boards the bus, he or she pays the predetermined fare to the driver. N.T., 10/19/2016, at 16.

> Due to Krapf receiving subsidies for the Rover program, Krapf was required to keep an accounting and to submit a total of the discounted fares collected. Once submitted, PennDOT would then calculate the reimbursement due to Krapf. In 2013, PennDOT audited the Rover program and found significant shortfalls in the fares collected.

TCO at 5.

In 2013, PennDOT advised Rover to implement a new system called Ecolane that streamlined the mileage calculations based on GPS signals and pickup data, making it easier, for auditing purposes, to calculate and keep track of the fares paid. *Id.* The drivers had a tablet that would tell them which passengers to pick up each day and how much money should be collected for each individual passenger. *See* N.T., 1/7/2015, at 7. Krapf also implemented a system to reconcile the fares daily with the rider logs. TCO at 5. At the end of the day, the driver would count all money, checks, and coins collected and fill out a fare reconciliation sheet noting the total

amount. N.T., 1/7/2015, at 7-8. A dispatcher would verify the amount. *Id.* at 8. Coins were recounted by machine. *Id.* The paper currency and fare reconciliation slip were placed into a ziplock bag and deposited into a partitioned drop safe that could only be accessed by someone who knew the code and had the key to access the interior. *See id.*

As general manager, Appellant had unfettered access to the safe. He was responsible for managing the fares collected: emptying the ziplock bags, and sorting the cash, checks, fare reconciliation sheets, and coin slips. *Id.* at 9. Once sorted, these items would go into a Tupperware bin and were stored in Appellant's office. *Id.*

Appellant's assistant, Paul Sell, testified at trial that Appellant would give him a Tupperware bin so that Mr. Sell would run the money through the cash counter, wrap it up in groups of $100, write the final amount on a post-it note, and return the money to the cash safe in Appellant's office. *See* N.T., 10/20/2016, at 193-196. Mr. Sell testified that each week Appellant would give him cash, usually in a reusable shopping bag, along with a deposit ticket and direct him to deposit it at TD Bank, twenty minutes away. *Id.* at 197-198.

Appellant's ex-wife Donna Kraidman also testified for the prosecution at trial. Appellant married Ms. Kraidman in July 1994, and they had two children. *See* N.T., 10/22/2016, at 715-716. In 2011, Appellant obtained a divorce decree from Mexico and married his second wife. *Id.* at 716. Ms. Kraidman and Appellant did not have a formal child support arrangement.

*See* N.T., 10/21/2013, at 408.

In April 2013, when Ms. Kraidman lost her job as a finance manager, Appellant agreed orally to pay her $2,100 per week. *See id.* at 409. Appellant told her that he received a raise at work and that he was being paid "under the table." *Id.* at 421. The money was deposited in cash into their joint checking account at TD Bank. *See id.* at 567. Ms. Kraidman regularly kept track of Appellant's deposits in an electronic spreadsheet. *Id.* at 409, 412.

Around September 4, 2014, an external auditor was investigating Rover due to approximately $78,000 of missing cash deposits. *See id.* N.T., 10/21/2013, at 444-47. The Chief Financial Officer (CFO) expressed his concern in multiple emails to Appellant; however, Appellant delayed in scheduling a meeting with him and stopped showing up to work. *See id.* at 454. The CFO searched Appellant's office and found no money in the safe or cash closet. *See id.* at 456-457. Appellant eventually met with the CFO, but Appellant was unable to provide missing documentation, such as the reconciliation sheets, or provide an explanation for the missing cash deposits. *See id.* at 462-63; N.T., 10/20/2015, at 148-52.

On September 16, 2014, Ms. Kraidman sent Appellant an email at work saying that he was over $37,000 behind on payments. N.T., 10/21/2013, at 413. Attached to the email was the spreadsheet created to keep track of Appellant's deposits into their joint account. *Id.* at 414; Commonwealth's Exhibit 53. According to Ms. Kraidman's calculations,

Appellant deposited $120,133.50 in actual cash into their joint checking account between April 12, 2013, and September 3, 2014. *See* N.T., 10/22/2016, at 560; N.T., 10/21/2013, at 411. According to Krapf, however, Appellant's salary remained $82,000 per year over this period. *See id*. at 467.

Following a five-day jury trial in October 2014, Appellant was convicted of theft by unlawful taking, theft by deception, and receiving stolen property. Appellant was sentenced as described above on January 19, 2016. Appellant timely filed a post-sentence motion to proceed *in forma pauperis*, which was granted. Due to administrative delay in appointing counsel, the court extended the time for Appellant to file his notice of appeal. Appellant timely appealed in March 2016. Appellant subsequently filed a timely, court-ordered 1925(b) statement in April 2016. The court issued a responsive opinion.

On appeal, Appellant raises the following issues:

I.    Did the Commonwealth fail to produce sufficient evidence to support guilty verdicts of Theft by Unlawful Taking, Theft by Deception and Receiving Stolen Property when its circumstantial evidence showed that [Appellant] acquired had [sic] possession of funds during the course of his employment at the Krapf bus company and that others had equal access to the funds prior to the discovery that some of the money had not been properly deposited in the company's bank account?

II.   Did the trial court deprive [Appellant] of due process in sustaining the Commonwealth's attorney's objections to defense counsel's attempt to cross-examine [A]ppellant's ex-wife Deborah Kraidman regarding whether she and her

bank complied with the reporting requirements for cash deposits of $10,000.00 or more, and whether she reported [Appellant's] alleged deposits into her bank account as taxable income?

Appellant's Br. at 2-3.

In his first issue, Appellant purports to challenge the sufficiency of the evidence presented at trial. However, the Commonwealth urges us to find this claim waived because Appellant failed to properly preserve the issue in his 1925(b) statement. *See* Commonwealth's Br. at 6-7. We agree.

As this Court observed in *Commonwealth v. Freeman*, 128 A.3d 1231, 1247 (Pa. Super. 2015):

The Pennsylvania Supreme Court has explained that Rule 1925 is a crucial component of the appellate process, which is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Freeman*, 128 A.3d 1231, 1247 (Pa. Super. 2015) (internal citations and quotation marks omitted).

In this case, Appellant's 1925(b) statement simply declared, in

boilerplate fashion, that the evidence was insufficient to support his convictions for theft by unlawful taking, theft by deception, and receiving stolen property. *See* Appellant's 1925(b) Statement, 4/1/2016. Appellant's failure to specify the element or elements of any of these convictions "upon which the evidence was insufficient" renders Appellant's sufficiency of the evidence claim waived on appeal. *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (quoting *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (internal citations omitted)).

Further, it is of no moment that the trial court addressed Appellant's sufficiency claim in its Rule 1925(a) opinion.

> The Commonwealth's failure [to object to the defect in the Rule 1925(b) statement] and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. Thus, we find 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion.

*Tyack*, 128 A.3d at 261 (quoting *Williams*, 959 A.2d at 1257 (internal citations omitted)). Accordingly, Appellant's sufficiency claim is waived.

Second, Appellant contends that he is entitled to a new trial because the trial court improperly limited his cross-examination of Donna Kraidman. *See* Appellant's Br. at 19-21. Appellant contends that the court erred in limiting cross-examination because (1) Ms. Kraidman's credibility may have been determinative of the jury's verdict and (2) he had no other way to offer evidence that she may have failed to report the deposits as taxable income.

- 7 -

*See* Appellant's Br. at 21. On that basis, Appellant maintains that he should receive a new trial. *Id.* Appellant's argument is without merit.

Our standard of review is as follows. The right to cross-examine adverse witnesses in a criminal case derives from the Confrontation Clause of the Sixth Amendment to the United States Constitution. *Commonwealth v. Laird*, 988 A.2d 618, 630 (Pa. 2010); *see* U.S. CONST. amend. VI. "Although the right of cross-examination is a fundamental right, it is not absolute." *Commonwealth v. Rosser*, 135 A.3d 1077, 1088 (Pa. Super. 2016).

> A trial court has discretion to determine both the scope and the permissible limits of cross-examination. *Commonwealth v. Rivera*, 983 A.2d 1211, 1230 (Pa. 2009). The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law. *Commonwealth. v. Birch*, 616 A.2d 977, 978 (Pa. 1992)

*Commonwealth v. Briggs*, 12 A.3d 291, 335 (Pa. 2011) (internal quotation marks omitted).

"In this Commonwealth, cross-examination is ordinarily limited to matters brought out on direct examination, except where the examiner is seeking to show bias." *Commonwealth v. Lobel*, 440 A.2d 602, 605 (Pa. Super. 2009). "A defendant has a fundamental right to present evidence provided that the evidence is relevant and not subject to exclusion under one of our established evidentiary rules." *Commonwealth v. McGowan*, 635 A.2d 113, 115 (Pa. 1993) (citation omitted). Relevant evidence "tends to prove or disprove some material fact, or tends to make a fact at issue

more or less probable." ***Commonwealth v. Patterson***, 91 A.3d 55, 71 (Pa. 2014) (citing ***McGowan***, 635 A.2d at 115).

However, "[t]he right of confrontation does not permit 'fishing expeditions.'" ***Rosser***, 135 A.3d at 1088.

> The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." ***[Delaware v.] Van Arsdall***, 475 U.S. 673, 679 (1986). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ***Delaware v. Fensterer***, 474 U.S. 15, 20 (1985).
>
> ***Van Arsdall*** articulates two inquiries for determining whether a limitation on cross-examination violates the confrontation clause." First, we inquire whether the limitation prejudiced the examination of that particular witness. In other words, absent the limitation, would the jury have received a "significantly different impression" of the witness's credibility? [***Van Arsdall***, 475 U.S.] at 679–80. Second, if there was error, we must determine whether it was harmless beyond a reasonable doubt; if so, reversal is not warranted. ***Id.*** at 681.

***Rosser***, 135 A.3d at 1088. "Without such limits, unchecked cross-examination on a theory of bias may unfairly prejudice the opposing party's case and only bring forth 'marginally relevant' evidence." ***Id.*** at 1088-89 (quoting ***Van Arsdall***, 475 U.S. at 679) (citation omitted).

Here, Appellant's attorney, Mr. Stretton, cross-examined Ms. Kraidman regarding her compliance with bank reporting requirements and whether she reported the cash deposited into her account as taxable income:

MR. STRETTON:        Now if you were getting these cash deposits from [Appellant] you're aware under the law when you get $10,000 you got to file forms with the bank for cash deposits?

COMMONWEALTH:        Objection, relevance, improper question.

COURT:        How is it relevant, Mr. Stretton?

MR. STRETTON:        Questioning the veracity of this, why she didn't follow bank regulations.

COMMONWEALTH:        On that basis I renew my objection for relevance, Your Honor

THE COURT:        Sustained.

MR. STRETTON:        Did you make any effort to file with any agency any document that would evidence receipt from your husband of these payments that you now contend in this spreadsheet that you received from him?

MS. KRAIDMAN        No.

MR. STRETTON:        Did you report this income, these monies as –

COMMONWEALTH:        Objection, relevant per your earlier ruling Your Honor.

THE COURT:        Sustained.

MR. STRETTON:        Do you have anything at all that you filed tax wise, bank wise, any document at all that shows that [Appellant] was giving you cash deposits along the lines you'[ve] suggest[ed] in your spreadsheet and [in] your testimony today with you or available?

MS. KRAIDMAN:        I don't have anything, any bank deposit slips, saying that he is the one who put it in there.

MR. STRETTON        Your Honor, I have no other questions.

N.T., 10/21/2015, at 430-31.

According to the trial court, Appellant's proposed line of questioning was irrelevant and its effectiveness "marginal at best and therefore not protected by the Confrontation Clause." Trial Court. Op., 7/27/2016, at 15. We agree. Although Ms. Kraidman's testimony may have been determinative to the outcome of Appellant's case, Appellant fails to explain how either of these inquiries is relevant. *See McGowan*, *supra*. Appellant's claim that the questions were targeted to impeach Ms. Kraidman's credibility or veracity is not persuasive.

Preliminarily, we note that Appellant arguably obtained answers to these questions when he asked Ms. Kraidman if she had "any document at all that shows [Appellant] was giving [her] cash deposits." N.T., 10/21/2015, at 431. Her answer indicated to the jury that she did not have any deposit slips that would prove Appellant made the deposits into her checking account. Nevertheless, the proposed line of questioning is not a proper method of challenging Ms. Kraidman's credibility to show bias or improper motive for her testimony. Appellant does not articulate how bank-reporting requirements have any relevant, factual basis, or reveal a motive to fabricate or bias. *See Rosser*, 135 A.2d at 1088 (noting that defendant has right to confront an adverse witness with "verifiable fact that supports the defense," not to engage in a "fishing expedition" or solicit "marginally relevant evidence"); *see also Van Arsdall*, 475 U.S. at 678-79 (discussing

- 11 -

how jury should be allowed consider facts/events that furnished the witness a motive for favoring the prosecution in their testimony). Whether Ms. Kraidman reported the deposits as income is only marginally relevant at best and her possible falsification of taxes was immaterial to the outcome of Appellant's case. *See Lobel*, 440 A.2d at 605-606 (noting that Pennsylvania's restrictive view of cross-examination "holds that the cross-examiner is free to ask about any subject *relevant* to any issue in the case" or "where the examiner is seeking to show bias"). The court may limit cross-examination of this nature that is only marginally relevant at best, especially where a party is unable to lay a proper evidentiary foundation.

Moreover, Appellant had an opportunity to conduct an effective cross-examination to impeach Ms. Kraidman's credibility without any need to question her about bank reporting or her possible tax evasion. He successfully cross-examined Ms. Kraidman, to the extent that she admitted the following: (a) that she was angry with Appellant; (b) that she had access to other cash from her parents' estates; (c) that she never saw Appellant make any deposits; (d) that she had no deposit slips reflecting who made the deposits; and (e) that her testimony was the only nexus between the large cash deposits and Appellant. *See* TCO at 15-16. Thus, Appellant fails to suggest how the jury would have received a "significantly different impression" of Ms. Kraidman's credibility absent the limitation. *Rosser*, 135 A.3d at 1088 (quoting *Van Arsdall*, 475 U.S. at 679-80). Therefore, the

court's limitation on cross-examination did not prejudice Appellant, nor hinder his ability to conduct an effective cross-examination. **See Rosser**, 135 A.3d at 1088.

We discern no abuse of the trial court's discretion in that regard. Accordingly, the trial court's ruling is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/2017